Jackie **WELLS**, Appellant,

v.

**GOTFREDSON MOTOR CO., INC.**, Appellee.

No. 82–1885.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1983.

Decided June 2, 1983.

Rehearing and Rehearing en banc Denied June 9, 1983.

James S. Watson, III, McHenry & Watson, Jill Nagy, Lincoln, Neb., for appellant.

Richard H. Williams, Ryan & Williams, P.C., Lincoln, Neb., for appellee.

Before LAY, Chief Judge, and BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

Appellant Jackie Wells brought suit against appellee, Gotfredson Motor Co., Inc., (Gotfredson) alleging that Gotfredson had engaged in sexually discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Following a bench trial, the district court found that Wells did not make out a prima facie case of discrimination and also failed to carry her burden of persuasion that Gotfredson acted in a discriminatory manner. Accordingly, judgment was entered in favor of Gotfredson. Wells filed a motion for a new trial which the court denied in a memorandum opinion further explaining its earlier findings of fact and conclusions of law. On appeal, we affirm.

Wells was hired by Gotfredson in April of 1974 as a "service writer" in the service department of its car dealership. Wells secured this position through an informal hiring procedure in which she talked to the service supervisor, Jerry Greiner, and was offered the job based upon their oral discussion. During Wells' term of employment, she was warned ten times to stop her "visitation" at the front office because it took her away from her duties in the service department. At least once, the general manager, Farrell Eastin, talked to Wells about this problem in his office with the owner of the company present.

In the spring of 1976, Wells told Bob Stratman, the sales manager, that she was interested in securing a sales position in the future. Stratman indicated that he was not opposed to such a transfer and if an open-

ing occurred in the department, he would discuss it with her. In April of 1976, one of the salespersons notified Stratman that he would be leaving in May. Wells contacted Stratman and indicated that she wished to apply for the open sales position. Stratman stated that he would discuss the matter with the president of the company. However, the president was on vacation at that time, so Stratman approached Eastin about hiring Wells for the sales position. Eastin's reply to Stratman was "absolutely not." Eastin testified that his primary motive for denying the request was a concern about Wells' "visitation problem" with the front office. Eastin felt that offering Wells a sales position would aggravate the problem because she would be stationed on the sales floor which is in close proximity to the front office.

Stratman did not immediately tell Wells that Eastin had refused to hire her for the sales position. Wells resigned from her service position in June of 1976, because she believed it would better her chances of being hired for the sales position. When Stratman failed to call Wells, she phoned him about a week after her resignation. Stratman told Wells that a final decision had not yet been reached. Several weeks later Wells again called Stratman and was informed that the job had been filled by a man. Stratman told Wells that a man could better handle the sales position. Stratman testified that he felt a man would be better because of the physical labor required in the job.

On appeal, Wells alleges that the district court erred in finding: 1) that she failed to establish a prima facie case of sex discrimination under the rationale of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and 2) that she failed to demonstrate proof sufficient to show that Gotfredson's action was motivated in substantial part by sexually discriminatory reasons. We find that the district court erred in holding that Wells did not make out a prima facie case of sex discrimination; however, we agree that Wells failed to demonstrate by a preponder-

ance of the evidence that she was not hired because of her sex. We accordingly affirm.

The Supreme Court set out the most recent clarification of the order and allocation of proof applicable to a disparate treatment case in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), where it stated:

> In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802, 93 S.Ct. at 1824. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 804, 93 S.Ct. at 1825.

The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

In this case, the district court found that Wells had not made out a prima facie case of disparate treatment. We disagree. A prima facie case of disparate treatment under *McDonnell, supra,* requires proof that:

1. The plaintiff is a member of a protected class.

2. The plaintiff applied for and was qualified for the position in question.

3. The plaintiff was not hired.

4. After rejecting the plaintiff, the defendant continued to seek a person to fill the position.

The record clearly establishes that Wells proved that these four factors existed in this case. Thus, we find that Wells did make out a prima facie case of sex discrimination. However, we cannot say that the district court's finding that Wells failed to carry the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her was clearly erroneous. *See* Fed.R.Civ.P. 52(a).

■ The Supreme Court in *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) recently dealt with a situation similar to the one now before us. The district court in *Aikens* improperly required the plaintiff to submit direct evidence of discrimination and erroneously focused on the question of the existence of a *prima facie* case after the defendant advanced evidence at trial of a legitimate, nondiscriminatory reason. *Id.* at ——, 103 S.Ct. at 1482. The Supreme Court remanded that case because it could not be certain whether these legal errors influenced the district court's factual findings in favor of the defendant. *Id.* In the present case, while the district court's initial opinion left some uncertainty as to whether the court gave weight to Wells' *prima facie* evidence, the court's memorandum following her motion for a new trial left little doubt that the court recognized that an inference of discrimination could be drawn from that evidence.[1] The court nevertheless reiterated that the preponderance of the evidence in this case supported the defendant's contention that it acted for a legitimate, nondis-

criminatory reason. Specifically, the court stated:

> After listening to the testimony of both Stratman and Eastin and carefully observing their demeanor, I conclude that the preponderance of the evidence does not support the inference urged by the plaintiff, but supports the conclusion that the failure to place the plaintiff in a sales position was for a legitimate, nondiscriminatory business reason.

This ultimate factual finding was made giving Wells' evidence, including the evidence she introduced to support her *prima facie* case, all the "weight and credence it deserves," *United States Postal Service Board of Governors v. Aikens, supra,* —— U.S. at —— n. 3, 103 S.Ct. at 1481 n. 3. Therefore, the legal error made in this case did not influence the district court's ultimate factual finding and a remand is unnecessary.

LAY, Chief Judge, dissenting.

I respectfully dissent. Once we hold that the district court erred in failing to acknowledge the plaintiff's proof of a prima facie case of discrimination the proper procedure is to remand to the district court for a de novo review of the record. In failing to recognize that Wells had established a prima facie case, the district court obviously found that she had failed to prove *any* inference of discriminatory intent, and thus the court failed to give due credit to the evidence she presented in an effort to meet her ultimate burden. Thus, it is incongruous to affirm the court's finding that "Wells failed to carry the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against her" when we also find that the court erred in giving no weight whatsoever to Wells' initial proof of discrimination.

---

1. Contrary to the belief expressed in the dissent, trial courts in this circuit may not credit a defendant's nondiscriminatory reason without giving weight or credence to the logical inference of discrimination established by the plaintiff's prima facie evidence. Once a plaintiff establishes a prima facie case, a legally mandatory presumption of discrimination is drawn in the absence of any rebuttal by the defendant. When the defendant produces evidence of a legitimate, nondiscriminatory reason for its ac-

tions, that mandatory presumption drops from the case but the logical inference of discrimination arising from the prima facie evidence remains. As in *Aikens,* that prima facie evidence must be considered by the trial court and must be given "whatever weight and credence it deserves" in light of the defendant's rebuttal evidence. *United States Postal Service Board of Governors v. Aikens,* —— U.S. at —— n. 3, 103 S.Ct. at 1481 n. 3.

The majority is correct when it notes in this case, as the Supreme Court noted in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), that the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093. However, the Court in *Burdine* went on to note that the "*McDonnell Douglas* [*Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." 450 U.S. at 253, 101 S.Ct. at 1093. That is to say, "[i]n a Title VII case, the allocation of burdens and the creation of a presumption by the establishment of a prima facie case is intended progressively to sharpen the inquiry into the elusive factual question of intentional discrimination." *Id.* at 255 n. 8, 101 S.Ct. at 1094 n. 8.

The majority underestimates the weight to be given a plaintiff's case when a prima facie showing of illegal discrimination has been made. In *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court noted that "[t]he importance of *McDonnell Douglas* lies . . . in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Id.* at 358, 97 S.Ct. at 1866. When a plaintiff establishes a prima facie case, he or she eliminates the most common nondiscriminatory reasons for the plaintiff's rejection: the plaintiff's lack of qualifications or an absence of a vacancy

in the position sought. *Burdine,* 450 U.S. at 253–54, 101 S.Ct. at 1093–94; *Teamsters,* 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. Once the plaintiff's prima facie case is established, the defendant employer has the burden to rebut the resulting inference of discriminatory intent, because in light of the prima facie case a trier of fact presumes that the employer's acts, "if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *see also Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094; *Teamsters,* 431 U.S. at 358, 97 S.Ct. at 1866.

The explanation the defendant employer sets forth for the plaintiff's rejection must be legally sufficient to justify a judgment for the defendant. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1095. Even when the employer meets the plaintiff's prima facie case by articulating a nondiscriminatory reason for its acts, the plaintiff's case is not dissipated. Instead, when the employer meets its burden of production, "the factual inquiry proceeds to a new level of specificity," *id.,* and the ultimate factual issue regarding the employer's intent is framed "with sufficient clarity so that the plaintiff will have a full and fair opportunity" to prove that he or she has been the victim of intentional discrimination. *Id.* at 255–56, 101 S.Ct. at 1094–95.[1]

In this case I believe it is apparent that when the trial court erroneously failed to acknowledge Wells' prima facie case, it deviated from the basic allocation of burdens and order of presentation of evidence in a Title VII case prescribed in *McDonnell Douglas,* and deprived Wells of the inference of discriminatory intent to which she was entitled.

---

1. The Court in *Burdine* also noted that when an employer rebuts a plaintiff's prima facie case:

    [W]e do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a prima facie case. A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence. *Nonetheless, this evidence and inferences properly drawn*

    *therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual.* Indeed, there may be some cases *where the plaintiff's initial evidence,* combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.
    450 U.S. at 255 n. 10, 101 S.Ct. at 1094 n. 10 (emphasis added).

The court today finds that the district court's failure to acknowledge Wells' prima facie case does not warrant remanding the case because Gotfredson met, in any event, its burden of production by showing a legitimate nondiscriminatory reason for its acts. However, whether the defendant met its initial burden of production is a factual determination to be made by the district court. Because the district court failed to recognize that Wells had made a prima facie case, it engaged in no fact-finding process to determine whether Gotfredson articulated a nondiscriminatory reason sufficient to rebut the inference of discriminatory intent the plaintiff had established. It is not up to this court to resolve this factual issue, or the issue of whether the plaintiff carried her ultimate burden of persuasion, when those issues have not been considered properly by the district court. The appropriate procedure is to vacate the judgment and remand the case to the district court. *See Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1791–92, 72 L.Ed.2d 66 (1982); *DeMarco v. United States,* 415 U.S. 449, 450 & n. *, 94 S.Ct. 1185, 1186 & n. *, 39 L.Ed.2d 501 (1974) (per curiam); *Rule v. International Association of Bridge, Structural and Ornamental Ironworkers,* 568 F.2d 558, 568 (8th Cir.1977); *General Electric Credit Corp. v. Robbins,* 414 F.2d 208, 211 (8th Cir.1969).

In this case it is not clear that a finding for Gotfredson is required on the issue of whether Gotfredson has met its burden of production or on the ultimate issue of whether Wells has been discriminated against in violation of Title VII. *Cf. Horner v. Mary Institute,* 613 F.2d 706, 713–14 (8th Cir.1980). This is especially true in light of Wells' prima facie case and the resulting inference of discriminatory intent which the trial court failed to take into account; this evidence must also be weighed with the undisputed evidence that Gotfredson's sales manager, Stratman, clearly displayed a gender job bias.

Here, Wells' prima facie case, along with evidence of Stratman's obvious gender bias, establishes a strong showing of discriminatory intent. However, when the district court has erroneously dismissed the plaintiff's evidence as failing to establish even a prima facie inference of discrimination, it follows just as night follows day that the trial court will find that the plaintiff had failed to carry his or her ultimate burden of proof. The die is thus cast. The plaintiff may have lost her case at trial because the district court erred in failing to recognize her prima facie case. Now she deserves an opportunity to have her case properly and fairly considered by the trial court, and to have its judgment reconsidered by that court in light of the proper analysis of her case.[2]

On petition for rehearing Judge Ross has amended his opinion in light of the Supreme Court's recent decision in *United States Postal Service Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The majority now states that the trial court in considering Wells' motion for new trial affirmed that it gave Wells' evidence "all the 'weight and credence it deserves,'" *supra* at ——, 103 S.Ct. at 1479. According to the majority, this is indicated by the trial court's post-trial statement that after listening to the defendant's witnesses it concluded that "the

---

**2.** I would go further than ordering a remand for reconsideration of the case. I think the plaintiff is entitled to a new trial before a different trier of fact. I appreciate this statement can be read as suggesting the district judge would not be fair in reconsidering the evidence. I disavow any such intent. Every judge on this court respects the fairness and integrity of every district judge. My respect for Judge Urbom certainly is no exception to this observation. However, when a district judge serves as trier of fact and makes certain factual findings, if there exists an error of law and the case must be reconsidered, it ignores human nature to say that the same judge can begin anew and objectively weigh the evidence anew. It is human nature for anyone to vindicate his or her original judgment. To send the case back to the same trial judge, under these circumstances, is to remand the case to a trier of fact who has in effect prejudged the case before it is to be tried. I am fully aware a new trial before a new judge is not the most efficient procedure, but I am convinced, under the circumstances, it is the only fair procedure available.

preponderance of the evidence does not support the inference urged by the plaintiff, but supports the conclusion that the failure to place the plaintiff in a sales position was for a legitimate, nondiscriminatory business reason." *Supra* at ——, 103 S.Ct. at 1481.

To urge that this cures the district court's earlier error is a complete nonsequitur.

There is little wonder the trial court finds that the preponderance of the evidence favors the defendant when the court previously has held that the plaintiff failed to establish a prima facie inference of discrimination. In its post-trial memo the trial court fails to recognize that the plaintiff's evidence provides any inference of discriminatory intent whatsoever.

The district court's post-trial statement simply reemphasizes the fact that it failed to properly analyze and consider the inference of discrimination created by Wells' prima facie case. The trial court's conclusion that the preponderance of evidence does not establish the inference *urged* by the plaintiff simply repeats its original error, that is, the failure to give any weight to the inference of discrimination established by the plaintiff. The district court's finding moves forward to its inevitable conclusion without affording the plaintiff the inference of discriminatory intent to which she was entitled by virtue of the establishment of her prima facie case.

Unfortunately, this case now assumes vital importance in all discrimination cases in this circuit. The effect of the majority opinion lends the appearance to the idea that trial courts in this circuit may now credit a nondiscriminatory reason articulated by a defendant employer without giving any weight or credence to the inference established by a plaintiff's proof of a prima facie case. This means in order for plaintiffs in employment discrimination cases to carry their burden of proof they must produce direct evidence of discrimination, since trial courts in assessing the preponderance of evidence need not acknowledge an inference of discriminatory intent established by the recognized proof needed for a prima

facie case. This is clear error. *Aikens*, —— U.S. at ——, 103 S.Ct. at 1482.

The Supreme Court in *Aikens* remanded that case to the district court because, in light of the district court's error of law, the Supreme Court could not "be certain that its findings of fact in favor of the Postal Service were not influenced by its mistaken view of the law." *Id.* The district court's error of law in *Aikens* is the same error committed by the trial court in the present case. How is this case any different? The district court's post-trial statement at best makes it uncertain that the error of law in failing to acknowledge Wells' prima facie case did not influence the court's findings in favor of Gotfredson. The case should be remanded to the district court for proper analysis and consideration. The majority holding serves as a dangerous and erroneous precedent in discrimination cases in this circuit.